**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 38130**

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF NATALIE PARKS MC KEE, DECEASED. | ) ) | |
| -------------------------------------------------------- | ) | |
| MAUREEN ERICKSON, Personal representative, | ) ) ) | Coeur d'Alene, April 2012 Term |
| | ) | 2012 Opinion No. 91 |
| Petitioner-Appellant, | ) | |
| | ) | Filed: June 13, 2012 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| JEROME S. MC KEE, | ) | |
| | ) | |
| Respondent-Respondent on Appeal. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Shoshone County. Hon. Fred M. Gibler, District Judge; Hon. Patrick R. McFadden, Magistrate.

District Court decision affirming Magistrate, <u>affirmed.</u>

Lloyd A. Herman, Spokane Valley, WA., argued for appellant.

Dean & Kolts, Coeur d'Alene, for respondent. Charles R. Dean Jr. argued.

---

BURDICK, Chief Justice

This case concerns an appeal of the magistrate court's Finding of Fact, Conclusions of Law and Order denying Appellant Maureen Erickson's Motion for Partial Distribution of her mother's estate. The magistrate court found that the property Maureen sought to partially distribute was not part of the assets of her mother's estate. On appeal to the district court, the court affirmed the decision of the magistrate court and alternatively found that the matter was barred by the statute of limitations. We affirm the district court's decision that this case was barred by the statute of limitations.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Based upon a holographic will dated June 26, 1994, Maureen Erickson (Maureen) filed an Application for Informal Probate of Will on January 23, 2006, for her mother's, Natalie Parks McKee (Natalie), estate listing only herself and her father Bill McKee (Bill) in the section for "spouse, children, heirs, and devisees."  Maureen requested that her mother's holographic will dated June 26, 1994, be informally probated.  The application indicated that Natalie Parks McKee died on December 19, 1994, and that "tardy probate and appointment are authorized because [Maureen] was not aware of the whereabouts of the holographic will of the decedent dated June 26, 1994, until 2004, when said will was discovered by [Maureen]."  The will states:

> I will all of my portion of our property, real and personal, and every part of our estate to my daughter – Maureen Katherine McKee Erickson [and] also appoint her executrix of our estate.
> I do this knowing she will help Jerome Storm McKee (her brother) and his family should they ever need it.
> The household items may be divided between them with first choice going to Maureen.
> I am of sound mind and have not been influenced by anyone.
> Natalie Parks McKee
> June 26, 1994.

The Affidavit of Bill McKee, filed on the same day as the Application, stated that Bill was aware of his wife's holographic will because it was in his safety deposit box and that he did not provide it to Maureen until August 17, 2004.  Finally, a Preliminary Inventory was also filed, listing a tract of land[1] (the River Property) in Shoshone County, Idaho, as the sole asset of Natalie's estate.

Subsequent to the filing of Letters Testamentary, Jerome S. McKee (Jerome), Maureen's brother, filed a Demand for Notice pursuant to I.C. § 15-3-204 on July 12, 2006, and a Motion to Dismiss Probate on January 5, 2007.  A memorandum was also filed on January 5, 2007, in which Jerome stated that the filing of his mother's will was barred by the provisions of I.C. § 15-3-108.

On January 16, 2007, Maureen filed a Motion for Partial Distribution of her mother's estate, seeking distribution of an undivided ¼ interest in the River Property.  Jerome filed an objection to Maureen's motion, which included copies of a community property agreement between Bill and Natalie, dated and recorded July 12, 1988; and a Quitclaim Deed transferring

---

[1] Government Lot 2, Section 17, Township 49 North, Range 2 E.B.M.

Bill's interest in the River Property to Jerome and Mina C. McKee, dated and recorded March 13, 2000.

Another affidavit of Bill's was filed on March 8, 2007, which stated that he had executed a community property agreement on July 12, 1988, but had agreed with his wife later that they would leave all of their property to Maureen, who was without the resources to put her sons through college. He also stated that the whole family was present when he and his wife announced their wishes to leave their property to Maureen and that the family agreed with their decision. Further, he stated that his wife's will was drawn up before this meeting with the family; that he recognized that the will would revoke the community property agreement; that he was very depressed after his wife's death, and during this time he deeded the River Property to his son Jerome; that he kept his wife's will a secret; and that his son had talked him into deeding his interest in the River Property.

On March 16, 2007, the magistrate court held a hearing to consider the Motion for Partial Distribution, the Motion to Dismiss Probate, and a Motion to Strike the Affidavit of Bill E. McKee. The court pronounced its decision orally in open court and denied the Motion for Partial Distribution because the River Property was not an asset of Natalie's estate, as it had passed to Bill pursuant to the Community Property Agreement and was later deeded to Jerome and Mina McKee. The magistrate court also denied the motion to dismiss the probate because of other possible issues and matters that may be considered at a later date. The partial transcript that was subsequently filed in the record included one paragraph from the magistrate court's pronouncements on the record:

> In summary, the Court's rulings today are limited to upholding the validity of the community property agreement. Other potential remedies may be pursued by Ms. Erickson against Bill McKee for fraud based upon his actions as set forth in his affidavit or possibly against Jerome McKee if he was complaisant [sic] in any fraud that may have been perpetrated against Ms. Erickson. Any potential cause of action does not affect the title to the land the subject of the motion for partial distribution.

Erickson filed a Motion for Reconsideration on April 30, 2007, framing it in summary judgment terms by stating that there was a material question of fact regarding the intent of the McKees to rescind their community property agreement. An amended motion was filed to set a date for a hearing through new counsel over two years later on July 29, 2009, stating that additional evidence was located during a guardianship proceeding filed in Idaho. This evidence

included admissions by Bill of his and his wife's intent to rescind the community property agreement, and an admission that the two had entered into mutual wills rescinding the agreement. The magistrate court's Decision and Order on Amended Motion for Reconsideration denied the motion as Erickson had failed to produce any signed holographic will signed by Bill to support the asserted facts in the motion. The court also denied the motion on grounds that it was not timely, finding that it was unfairly prejudicial to Jerome. The original motion was filed timely, but was not properly noticed for hearing and the amended motion was not filed until 27 months after the court's ruling. Maureen then filed a notice of appeal to the district court. Jerome then filed a motion to dismiss the appeal, arguing the decisions were non-appealable.

The district court filed its Decision on Appeal on May 18, 2010, and affirmed the orders challenged on appeal, making its findings and conclusions on the record. The district judge stated on the record:

> So the first conclusion I have come to is that there was not a final judgment from which an appeal may be taken. Beyond that, though, because the issue which has been presented upon appeal was actually decided by the magistrate court and because it was decisive, treated it as final, I intend to address the merits of the appeal.
> . . .
> I think that I, as an appellate court in this capacity, have the authority to consider the motion on its merits, notwithstanding that I would have the option to simply state that there was no final appealable order. So I intend to do so.
> The first issue was the effect of the community property agreement. The magistrate court was correct that upon the death of Natalie Parks and the recording of the community property agreement, the property became vested in William McKee and was therefore not part of her estate. The court's initial decision was correct.
> Next we have the motion to reconsider. Here the magistrate court found that insufficient evidence had been presented by the appellant to support the claim that William and Natalie McKee had revoked their community property agreement sufficient to allow the appellant's motion for partial distribution. And I think it has to be emphasized that the context here was whether the court could grant the appellant's motion for partial distribution, which was the relief sought. And the court found that it could not.
> In reviewing the documentation presented in support of the motion for reconsideration, it is sufficient to establish that the property in question was [not] part of the estate of Natalie McKee. The decision of the magistrate court denying the motion to reconsider is affirmed. The property in question was by law not a part of the estate of Natalie McKee. It cannot be made a part of the estate by filing a probate which seeks to include property owned by others in the probate and then seeking a partial distribution of that property. The fact that this was

4

distributed to a son as opposed to a third party I don't think changes that analysis at all. You have to have the proper parties before the court.

The procedure followed by the appellant in this case was flawed. The proper procedure would have been for William McKee or his duly appointed conservator to bring an action against Jerry and [Mina] McKee to set aside the deed from William McKee to them. Then, if that action was successful, that property could conceivably be included in Natalie's estate. This was not done.

The arguments of the appellant notwithstanding, the appellant did not present facts to show that the property is a part of the estate that is subject to the partial distribution requested. At best the appellant has asserted facts which it contends could be used to set aside the deed to Jerry and [Mina]. Such arguments or positions do not provide the basis for a distribution of the property within the context of an estate. Here the estate remains open. If and when William McKee obtains an order from the court of competent jurisdiction divesting Jerry and [Mina] of their interests, then a motion for distribution of that property in the estate action might be brought. Until that happens there is no property to distribute. And when I say no property, I am specifically referring to the property that was deeded to Jerry. The . . . decision of the magistrate court is affirmed.

The appellee has urged an alternate basis for affirming the magistrate court which is the statute of limitations contained in . . . Idaho Code section 15-3-108. And I think that when I look at that code section that is the proper vehicle. . . . [A]n alternative basis for affirming the magistrate court is that the action to probate the estate was not filed within three years of the decedent's death. Accordingly, the decision of the magistrate court is affirmed.

Subsequent to this ruling, attempts were made to have the magistrate court sign a final Judgment, but the court declined to sign the document.

The district court denied Maureen's subsequent Motion for Reconsideration, stating simply that it had reviewed the arguments in support of the motion for reconsideration, and thereby denied the motion. A timely notice of appeal was then filed.

## II.    STANDARD OF REVIEW

For an appeal from the district court sitting in its appellate capacity over a case from the magistrate court, this Court directly reviews the record from the magistrate court, and then affirms or reverses the decision of the district court accordingly. *Barrett v. Barrett,* 149 Idaho 21, 23, 232 P.3d 799, 801 (2010). This Court will exercise free review over conclusions of law to determine whether the court correctly stated applicable law and will leave factual issues to the sound discretion of the magistrate court where they are supported by substantial and competent evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011).

5

## III.    ANALYSIS

### A.  An appealable order exists.

The initial issue in this case is whether an appealable order existed from which Maureen could take an appeal to the district court.  She argues that although there was no document labeled "judgment," the Findings of Fact and Conclusions of Law and Order was an appealable order from the magistrate court.  Because I.C. § 17-201 designates such an order from a magistrate court in probate matters as an appealable matter, we agree.

Pursuant to I.R.C.P. 83(a)(6), "any order, judgment or decree by a magistrate in a special proceeding in which an appeal is provided by statute" is a judgment or order rendered by a magistrate that can be appealed to the district judges division of the district court.  *See also In re Estate of Keeven,* 110 Idaho 452, 455, 716 P.2d 1224, 1227 (1986).  Idaho Code section 17-201 lists the judgments and orders from magistrate court in probate matters that can be appealed to the district court.  *Keeven,* 110 Idaho at 455, 716 P.2d at 1227; *In re Freeburn's Estate*, 97 Idaho 845, 848, 555 P.2d 385, 388 (1976).  Subsection (7) of I.C. § 17-201 lists as appealable, orders or judgments "[r]efusing, allowing or directing the distribution or partition of an estate, or any part thereof, or the payment of a debt, claim, legacy or distributive share."  Decisions by courts in these areas are subject to review regardless of whether they are final judgments.  *Keeven,* 110 Idaho at 455, 716 P.2d at 1227.

Although this Court recently explained in *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 620, 226 P.3d 1263, 1267 (2010), that "merely typing 'It is so ordered' at the end of a memorandum decision does not constitute a judgment" for purposes of appellate jurisdiction, the magistrate court's order in this case, by the application of I.R.C.P. 83(a)(6) and I.C. § 17-201(7), is found to be an appealable order.

### B.  The informal probate was barred by the statute of limitations.

Jerome argues on appeal that Maureen's claims are barred by the statute of limitations, first because I.C. § 15-3-108 requires a will to be probated within three years of the decedent's death, and second because Maureen's reliance upon the fraud provisions of I.C. § 15-1-106 is misplaced.  Maureen argues that her filing of the will for probate was within two years of the discovery of the fraud as provided for in I.C. § 15-1-106.  We agree with Jerome—Maureen failed to probate the will within the time allotted by I.C. § 15-3-108.

6

1. Idaho Code section 15-3-108

With exceptions that are not applicable in this case, Idaho Code section 15-3-108 states that "[n]o informal probate or appointment proceeding or formal testacy or appointment proceeding . . . may be commenced more than three (3) years after the decedent's death." In the present case, the decedent's date of death was December 19, 1994, but the Application for Informal Probate of Will and Informal Appointment of Personal Representative was not filed until January 23, 2006, almost twelve years later—well after the statute of limitations had run. The probate proceeding filed by Maureen is barred by the statute of limitations.

2. Idaho Code section 15-1-106

Idaho Code section 15-1-106 explains the effects of fraud on probate proceedings:

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. *Any proceeding must be commenced within two (2) years after the discovery of the fraud*, but no proceeding may be brought against one not a perpetrator of the fraud later than five (5) years after the time of commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.

(Emphasis added.). Additionally, the comment to I.C. § 15-1-106 states in part that "if a will is fraudulently concealed after the testator's death and its existence not discovered until after the basic three year period (section 3-108) has elapsed, there still may be an action under this section." I.C. § 15-1-106 cmt. Maureen argues that I.C. § 15-1-106 extends the three-year requirement in I.C. § 15-3-108 for commencement of probate to an additional two years following the discovery of fraud. We disagree as I.C. § 15-1-106 allows for the commencement of an action against the perpetrator of a fraud and does not toll the three year statute of limitations in I.C. § 15-3-108.

In *In re Cahoon's Estates*, this Court examined an action taken pursuant to this code section, and focused on the manner in which the party actually proceeded in regard to the allegations of fraud for the purpose of timeliness. 102 Idaho 542, 549, 633 P.2d 607, 614 (1981). The party in *Cahoon's Estates* was found to have commenced the action within the period established by I.C. § 15-1-106. *Id.* at 550, 633 P.2d at 615. The party had sought relief from a probate judgment allegedly obtained through fraud and petitioned the court on the grounds of

7

fraud. *Id.* at 549, 633 P.2d at 614. This Court found this to be an appropriate means of raising the question of fraud. *Id.* Idaho Code section 15-1-106 was an appropriate means of proceeding in *Cahoon's Estates* because the fraud had been perpetrated in a probate action, *i.e.*, "fraud . . . perpetrated in connection with any proceeding . . . filed under this code." I.C. § 15-1-106. As no probate proceeding had previously been filed that Maureen could seek relief from, she would only be protected by I.C. § 15-1-106 in specific circumstances contemplated in the comment (where a will is fraudulently concealed) because the fraud was "used to avoid or circumvent the provisions or purposes of this code." I.C. § 15-1-106. Yet, as in *Cahoon's Estates,* Maureen is still required to seek "appropriate relief against the perpetrator of the fraud." I.C. § 15-1-106; 102 Idaho at 549, 633 P.2d at 614. Maureen has failed to seek the appropriate relief in this case.

When Maureen filed the Application for Informal Probate of Will and Informal Appointment of Personal Representative, she claimed that the "time limit for informal probate or appointment ha[d] not expired" and that "tardy probate and appointment are authorized" because she was "not aware of the whereabouts of the holographic will of the decedent dated June 26, 1994, until 2004, when said will was discovered." An affidavit filed the same day stated that the will was not provided to Maureen until August 17, 2004. As fraud had not been perpetrated in a previous probate action, it was inappropriate for Maureen to file an informal probate action and then allege fraud within that same action. A probate action seeking partial distribution of property owned by another party regardless of any alleged fraud is an inappropriate means of seeking relief. Idaho Code section 15-1-106 provides a party the opportunity to attack a previous probate action in the case of a fraudulently concealed will, not the right to initiate a probate action once the statute of limitations has run. An appropriate means for Maureen to have pursued would have been to file a statutory cause of action pursuant to I.C. § 15-1-106 outside the process of settlement of the estate. If concealment was "used to avoid or circumvent" the provisions of the probate code, she could have sought relief against the party concealing the will within two years of discovering the fraud. I.C. § 15-1-106. If she chose to seek restitution from a party not a perpetrator that benefitted from the fraud, she would have had to pursue the claim within five years of the commission of the fraud, in this case, the date the concealment of the will began, which would have been at the time of Natalie's death. *Id.* Both limitations have run and neither option is available to Maureen. Therefore, we find that Maureen has failed to seek appropriate relief within the limitations allowed under I.C. § 15-1-106.

Another possible action that could have been pursued by Maureen would have been a quiet title action. "An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim . . . ." I.C. § 6-401. "Every estate or interest known to the law in real property, whether legal or equitable, may be determined in an action to quiet title." *Lewiston Lime Co. v. Barney*, 87 Idaho 462, 468, 394 P.2d 323, 326 (1964). Maureen alleged an interest in the River Property based on the circumstances surrounding her mother's will. She could have pursued a quiet title action with this basis against Jerome and his wife, the title owners of the River Property. However, Maureen chose to pursue her alleged interest through an informal probate action.

Even if Maureen had sought appropriate relief, the manner in which it was filed was also inappropriate. When a party wishes to initiate an action based in fraud, it must be pled with particularity. *See* I.R.C.P. 9(b); *Taylor v. McNichols*, 149 Idaho 826, 845-46, 243 P.3d 642, 661-62 (2010). Maureen failed to state any allegations of fraud or mention an action pursuant to I.C. § 15-1-106. According to the record, it was not until a memorandum in response to Jerome's motion to dismiss the probate filed March 9, 2007, that Maureen first suggested fraud as a reason the will was not presented earlier.

Alternatively, Maureen argues that an action alleging fraud was timely brought in the State of Washington, that a judgment was reached in said case, and that a copy of that judgment was recorded in Shoshone County. Maureen does not include any further details on the judgment, nor does she cite a document in the record to show that such a judgment exists. Attached to her Amended Motion for Reconsideration is a judgment from the State of Washington regarding the ownership of property, but it does not include the River Property at question in this case. This does not meet the requirements of particularity.

## C. Sanctions awarded against Maureen and her counsel.

Jerome includes, in the final argument section of his brief, an argument that "Maureen should be sanctioned under Idaho Code § 12-121 and her counsel sanctioned under IAR [11.2] . . . ." Maureen argues that Jerome has failed to provide sufficient authority for sanctions in this case. Regardless of whether Jerome has included sufficient authority in his brief, Idaho Appellate Rule 11.2 allows this Court to take up the issue of appropriate sanctions upon its own

9

initiative. For the reason that several peculiar irregularities are presented in this case, which we will briefly outline below, we agree with Jerome that sanctions should be awarded in this case.

Idaho Appellate Rule 11.2 allows this Court to impose sanctions against a lawyer when it is found that the lawyer brought the appeal in bad faith or for an improper purpose. *Funes v. Aardema Dairy*, 150 Idaho 7, 13, 244 P.3d 151, 157 (2010); *Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009). This appellate rule "'serves to sanction attorneys who violate the certification that they made when signing a notice of appeal' and warrants attorney fees where an appeal 'was so far outside the realm of reasonability that it warrants a sanction on the losing attorney.'" *Funes*, 150 Idaho at 13, 244 P.3d at 157 (quoting *Fowble v. Snoline Exp., Inc.,* 146 Idaho 70, 77, 190 P.3d 889, 896 (2008)).

Filed with his brief on appeal to the district court, Maureen's counsel attempted to put into evidence a copy of a Judgment from a Washington Superior court case to prove the existence of fraud. He acknowledged in oral argument the reason the case was filed in Washington was to transfer assets out of Bill's estate to qualify for Medicaid assistance. During his explanation of the Washington judgment in oral argument, he said the shifting of assets in the case was disclosed in his brief. No such explanation can be found in briefs filed with this Court. In fact, he argued in the opening brief on appeal that the case was an "action alleging fraud for disposing of property that belonged to Maureen." We note he also argued in the probate action that the Washington judgment was "tantamount to a transfer in fraud of creditors."

Further, based upon the fact that Maureen bases most of her appeal on the wrong standard of review, that she pursued this case on a theory of fraud when fraud was not pled or stated with particularity pursuant to I.R.C.P. 9(b), and that no actual evidence of fraud is presented on appeal, we find the appeal was brought in bad faith and for the wrongful purpose of misleading this Court. Therefore, we assess attorney fees as a sanction pursuant to I.A.R. 11.2 against Maureen and Maureen's attorney.

## IV.    CONCLUSION

We find that there was jurisdiction to review this case on appeal and that the probate proceeding was barred by the statute of limitations. Further, we award costs and attorney fees to Jerome, and order that Maureen and Maureen's counsel be liable under I.A.R. 11.2.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**

10